UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-509-GWU

VICKIE EVERSOLE, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Eversole

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Eversole

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Vickie Eversole, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of coronary artery disease (status post triple vessel coronary artery bypass grafting), morbid obesity, hypertension controlled with medication, a history of hyperlipidemia controlled with medication, arthralgias, and an anxiety disorder. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits.  (Tr. 22-5).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional impairments.  (Tr. 299).  She: (1) could not crawl or climb ropes, ladders, or

7

scaffolds; (2) could only occasionally climb stairs and ramps; (3) would require work that would not expose her to temperature or humidity extremes, vibration, or hazardous machinery; and (4) would be limited to simple, non-detailed tasks where public and co-worker contact was casual and infrequent, where supervision was direct and non-confrontational, and where changes in the workforce were infrequent and gradually introduced. (Tr. 299-300). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 300).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Although the plaintiff underwent the coronary artery bypass operation after a heart attack in 1998 (Tr. 149, 154-7), and continued to complain of chest pain, partially arising from bones rubbing together in the area where her ribs were put back together after heart surgery (Tr. 292), as well as back and leg pain (Tr. 294-5), her current treating physicians found few abnormalities on examination other than obesity (e.g. Tr. 184, 196, 198-200). On most occasions, she was noted have a normal gait and station, a full range of motion of the back and all joints, her hypertension, for which she received medication, was said to be well controlled, and no specific functional restrictions were given. On an office visit in April, 2002, a

8

physician, Dr. Neeraj Mahboob, indicated that he filled out "disability papers," but there do not appear to be any such records in the Court transcript, and there is no indication of what Dr. Mahboob put in the papers. (Tr. 186, 188). It also appears that Dr. Mahboob saw the plaintiff only on one occasion.

A consultative physical examiner, Dr. Bobby J. Kidd, examined Mrs. Eversole on April 29, 2003, and reviewed some previous records. (Tr. 209-10). He found the plaintiff to be overweight, weighing 259 pounds at a height of height of five feet two inches, but she had a normal gait, no evidence of peripheral vascular insufficiency, had a normal range of motion, and could stand on one leg at a time without difficulty. (Tr. 211-13). Dr. Kidd could not feel the motion of the bones in the chest which Mrs. Eversole described, but stated that he was "confident" that she really had the problem. (Tr. 210). He diagnosed "status post" heart catheterization, "status post" triple vessel bypass, pseudoarthritis of the sternum, hypertension, and marked exogenous obesity. (Tr. 213).

Residual functional capacity forms were completed by state agency reviewing physicians, who made findings consistent with the hypothetical question. (Tr. 222-38).

Although the plaintiff alleges on appeal that the ALJ improperly discredited her subjective complaints of pain, citing <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847 (6th Cir. 1986), a review of the ALJ's decision shows that he

9

considered her subjective complaints in detail. (Tr. 21). While Dr. Kidd did believe that her complaints of chest pain related to bones rubbing together was credible, he did not assess any specific functional restrictions due to this problem, and it is not entirely clear how this condition would limit the plaintiff beyond the already-imposed restriction to "light" level exertion. The plaintiff additionally alleges that, since she was represented by a non-attorney at the administrative level, the ALJ had a heightened duty to obtain information from her treating sources. Unlike the uneducated, mentally limited plaintiff in Lashley v. Commissioner of Health and Human Services, 708 F.2d 1048 (6th Cir. 1983), however, the plaintiff was a high school graduate (Tr. 288) who was allowed to testify at length about her subjective complaints. The Sixth Circuit has also held that the mere fact that a claimant is unrepresented is not grounds for reversal. Born v. Secretary of Health and Human Services, 923 F.2d 1168, 1172 (6th Cir. 1990) (citation omitted).

The plaintiff's primary argument on appeal is that the ALJ ignored the statements of a consultative psychological examiner, Pamela Starkey, who examined Mrs. Eversole on June 2, 2003 and diagnosed an anxiety disorder. (Tr. 219). The plaintiff, who did not even allege a psychological problem when she applied for disability (Tr. 89), complained primarily of physical problems to the psychologist, although she also stated she did not like to associate with other people, and she had a problem with irritability. (Tr. 215-18). Despite not liking to

10

associate with other people, Mrs. Eversole related that she tried to go to church every week and visited her mother about every week. (Tr. 219). Although the psychologist indicated that Mrs. Eversole's response to normal stresses of the day-to-day work environment might be marked by irritability, she was likely to have only mild difficulty sustaining the attention and pace necessary for completing tasks common to day -to-day work settings and everyday household routines. (Id.). Counsel for the plaintiff points to a statement by Ms. Starkey that recommended counseling for the plaintiff, who with effective treatment "could be rendered psychologically amenable to job training and/or public employment efforts in about three months." (Tr. 220). Counsel reasonably avers that this statement implies that the plaintiff was not currently able to sustain employment. However, under the circumstances of this case, the Court concludes that a remand is not justified based on this statement alone. First, it appears to be contradictory to the other statements in Ms. Starkey's report about work ability, as well as to her conclusion that the plaintiff had a current Global Assessment of Functioning (GAF) score of 61. (Tr. 219-20). A GAF score of 61 equates to only mild symptoms. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition-Text Revision), p. 34. Moreover, while the plaintiff did complain to a family physician of two weeks of "intermittent anxiety" in January, 2002, and was prescribed Xanax (Tr. 194, 197), she told Ms. Starkey that she did not take this medication because it was addictive

11

and that she never had any other psychological treatment or counseling (Tr. 218). Significantly, subsequent office notes do not mention anxiety as one of the plaintiff's problems. (Tr. 272-9). State agency physicians who reviewed the record following Starkey examination concluded that the plaintiff did not even have a "severe" mental impairment. (Tr. 239, 251, 254). For all these reasons, the Court concludes that the mental factors given in the hypothetical question gave the plaintiff considerable benefit of the doubt.

The decision will be affirmed.

This the ___7___ day of September, 2006.

G. WIX UNTHANK
SENIOR JUDGE